1

**THOMAS C. HORNE**
Attorney General

2

Firm Bar No. 14000

3

**CURTIS A. COX**
State Bar No. 019040

4

Assistant Attorneys General
1275 West Washington Street

5

Phoenix, Arizona  85007-2926
Telephone:  (602)542-7781

6

Fax: (602) 542-7798
Environmental@azag.gov

7

Attorneys for Plaintiffs

8

9

**UNITED STATES DISTRICT COURT**

10

**FOR THE DISTRICT OF ARIZONA**

11

12

| | |
|---|---|
| **STATE OF ARIZONA,** *ex rel***, HENRY R. DARWIN,** Director, **ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY,** | Civil Action No. CV 12-644-TUC-FRZ |
| **Plaintiff,** | **FIRST AMENDED COMPLAINT** |
| **v.** | |
| **INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED STATES SECTION,** | (Non-classified Civil) |
| **and** | |
| **EDWARD DRUSINA, in his official capacity as Commissioner of the INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED STATES SECTION,** | **(Honorable Frank R. Zapata)** |
| **Defendants.** | |

13

14

15

16

17

18

19

20

21

22

23

24

        The Plaintiff, State of Arizona *ex rel* Henry R. Darwin, Director, Arizona

25

Department of Environmental Quality ("State" or "Plaintiff"), alleges against the

26

Defendants the following:

27

28

**Nature of the Action**

1.      This is a civil action brought for violations of the Arizona Pollutant Discharge Elimination System ("AZPDES") Permit Program, adopted in the State of Arizona pursuant to Arizona Revised Statutes ("A.R.S.") Title 49, Chapter 2, Article 3.1, and Arizona Administrative Code ("A.A.C.") Title 18, Chapter 9, Articles 9 and 10, and for violations of AZPDES Permit, No. AZ0025607, issued by the Arizona Department of Environmental Quality ("ADEQ") to the United States Section of the International Boundary and Water Commission ("USIBWC") on November 19, 2007.

2.      The Defendants have on-going violations of AZPDES Permit, No. AZ0025607. The permit violations are related to the discharge and disposal of inadequately treated wastewater and biosolids in the State of Arizona from the Nogales International Wastewater Treatment Plant ("NIWTP") located at 865 Rio Rico Industrial Park, Rio Rico, Arizona.

**Jurisdiction, Authority and Venue**

3.      All acts and violations alleged herein have occurred and are continuing to occur within the State of Arizona.

4.      This Court has jurisdiction pursuant to A.R.S. § 49-262 and 33 U.S.C. § 1323 and 1365.

5.      The State on behalf of the Arizona Department of Environmental Quality and through the Office of the Attorney General for the State of Arizona is authorized to bring this civil action under A.R.S. § 49-262 and 33 U.S.C. §§ 1323 and 1365.

6.      ADEQ maintains its principal office at 1110 W. Washington St., Phoenix, Arizona, in Maricopa County. Venue is proper in this Court pursuant to A.R.S. § 49-265, 28 U.S.C. § 1391(b)(2) and 33 U.S.C. § 1365(c).

**The Parties**

7.      The State's relator, Henry R. Darwin, is the Director of the Arizona Department of Environmental Quality. This action is brought on behalf of Director

Darwin in his official capacity and in the name of the State of Arizona pursuant to A.R.S. §§ 49-103, 49-104, and 49-262.  The Director in his official capacity and the Arizona Department of Environmental Quality are authorized by the Administrator of the United States Environmental Protection Agency ("EPA") to administer the National Pollutant Discharge Elimination System ("NPDES") Permit Program in the State of Arizona, pursuant to 33 U.S.C. § 1342.

8.     The State is a citizen under 33 U.S.C. § 1365 and gave sixty days notice of the violations alleged in this Amended Complaint prior to filing this Amended Complaint.

9.     Defendant International Boundary and Water Commission, United States Section, is a "person," pursuant to A.R.S. § 49-201(27), 33 U.S.C. § 1362(5) and 33 U.S.C. § 1365, and is a federal agency of the executive branch of the United States. Defendant Edward Drusina was appointed and sworn in as the commissioner of the International Boundary and Water Commission, United States Section.

10.     Although the USIBWC is headquartered in El Paso, Texas, it operates the NIWTP located at Rio Rico Industrial Park at 865 Rio Rico Industrial Park, Rio Rico, Arizona.

11.     The NIWTP is a publicly owned treatment works ("POTW") and a wastewater treatment plant ("WWTP").

12.     The Defendants are subject to sanctions and injunctive relief pursuant to A.R.S. § 49-262 and 33 U.S.C. §§ 1323 and 1365.

**General Allegations**

13.     The Clean Water Act prohibits the discharge of pollutants to waters of the United States from point sources unless the pollutants are discharged in compliance with a NPDES Permit issued pursuant to 33 U.S.C. §§ 1311 and 1342.

14.     Pursuant to 33 U.S.C. § 1251, the EPA administers the Clean Water Act programs including the NPDES Permit Program.  However, the EPA is authorized to

3

delegate administrative authority over the NPDES Permit Program to each State that establishes a state NPDES permit program with adequate State law authority.  EPA maintains oversight authority over the state NPDES programs.

15.     The EPA has delegated primary administration of the NPDES Permit Program in Arizona to the State of Arizona.  In Arizona, ADEQ is primarily charged with administering and enforcing the Clean Water Act programs including the NPDES Permit Program, which in Arizona, is known as the Arizona Pollutant Discharge Elimination System or AZPDES Permit Program and is found at A.R.S. Title 49, Chapter 2, Articles 3.1 and 4, A.A.C. Title 18, Chapter 9, Articles 9 and 10.

16.     The AZPDES Permit Program is consistent with the requirements of Sections 402(b) and 402(p) of the Clean Water Act.  Pursuant to A.R.S. § 49-255.01, a person shall not discharge except in conformance with a permit issued or authorized under the AZPDES Permit Program or a valid and effective permit that was issued or authorized by the EPA.  A "person" is defined at A.R.S. § 49-201(26) to include "a commission, the United States government or any federal facility, interstate body or other entity."  A "discharge" is defined at A.R.S. § 49-255(2) as any addition of any pollutant to navigable waters from any point source.

17.     The Defendants and the NIWTP are subject to the State's AZPDES Permit Program requirements pursuant to 33 U.S.C. § 1323.

18.     The NIWTP is part of the sanitary sewer system for Nogales, Arizona, in the United States, and Nogales, Sonora, in Mexico.

19.     The NIWTP treats wastewater from Nogales, Sonora, Mexico pursuant to boundary and water treaties of the United States and Mexico.  USIBWC applies and administers these treaties.

20.     Wastewater from Nogales, Sonora, Mexico is conveyed north by a gravity collection system to Nogales, Arizona, where it is combined with sewage flows from Nogales, Arizona.  The flows are then conveyed to the NIWTP.  The pipeline for the

4

sewage collection system is known as the International Outfall Interceptor ("IOI") and extends from the international border to the NIWTP.

21.     The Defendants have authorized and control the flow of wastewater from Mexico across the United States border into the IOI to the NIWTP.

22.     The IOI was constructed in 1970-71 and is a 24 to 42 inch pipe made of unlined concrete.

23.     The pipeline alignment of the IOI follows the Nogales Wash, a tributary of the Santa Cruz River, in Arizona.  Parts of the IOI are located immediately below the concrete floor or bed of the Nogales Wash.

24.     On or about March 27, 2006, USIBWC applied to ADEQ for a new AZPDES permit for the NIWTP to discharge treated domestic and industrial wastewater, a pollutant, from a single outfall pipe to an unnamed tributary to the Santa Cruz River, a water of the United States, near the confluence of Potrero Creek and the Santa Cruz River in Santa Cruz County, Arizona. The outfall pipe is located one-fourth mile below the Potrero Creek confluence and is upstream of the Tubac Bridge.

25.     ADEQ issued an AZPDES permit, No. AZ0025607, to USIBWC as a co-permittee with the City of Nogales on or about November 19, 2007, with an effective date of December 24, 2007.

26.     On or about May 23, 2012, USIBWC applied to renew AZPDES Permit No. AZ0025607 and requested to continue to operate and discharge under the same substantive conditions and requirements that were applicable under the December 24, 2007 version of the permit.

27.     The permit authorizes the discharge of wastewater from a single outfall pipe, Outfall 001 ("Outfall" or "Outfall 001"), of the NIWTP to the Santa Cruz River, a water of the United States.

28.     USIBWC has operated the NIWTP and discharged wastewater from Outfall 001 continuously throughout the term of AZPDES Permit No. AZ0025607.

5

29.     Pursuant to 40 C.F.R. Part 403, a POTW is required to develop a pretreatment program if the POTW operates with a total design flow greater than five million gallons per day and receives from industrial users wastewater and related pollutants that pass through or interfere with the POTW's operation.

30.     In Nogales, Sonora, Mexico at least 87 significant industrial users ("SIUs") and an unknown number of smaller commercial businesses are connected to and discharge industrial wastewater to the NIWTP sanitary sewer system, which is connected to the IOI.

31.     Based on the industrial wastewater flows from Mexico, AZPDES Permit No. AZ0025607 contains special conditions with pretreatment requirements that are specifically applicable USIBWC.  These special conditions are located at Part V(A)(1) of the permit.  The special pretreatment requirements have been violated by USIBWC because USIBWC has failed to implement a pretreatment program that meets the requirements of the AZPDES Permit No. AZ0025607 and the federal Clean Water Act pretreatment rules as adopted by the State of Arizona.

32.     ADEQ has issued notices of violation ("NOVs") in past years, including 2008 and 2010, to USIBWC for violations of AZPDES Permit No. AZ0025607.

33.     On October 22, 2010, after issuing NOVs that were not resolved, ADEQ issued Compliance Order, No. P-73-10 ("Compliance Order"), to USIBWC for violations of AZPDES Permit No. AZ0025607.  The Compliance Order was provided to USIBWC by certified mail, return receipt requested. (Exhibit A.)

34.     Pursuant to A.R.S. § 49-261, the Compliance Order became final and enforceable on or about November 22, 2010.

///

///

///

## COUNT ONE

## ILLEGALLY DISCHARGING CADMIUM
## IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, PART I.A

35.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

36.     AZPDES Permit No. AZ0025607, Part I.A, Table 1, establishes limits for cadmium discharges from Outfall 001.

37.     Cadmium is a metal used in industrial processes and products including metal parts, batteries, paint, plastics, solder and batteries.

38.     The monthly average concentration permit limit for cadmium discharges is 2.42 µg/L.

39.     USIBWC violated the monthly average concentration limit for cadmium discharges from Outfall 001 in January, March, May, June, July, October, November, and December, 2008; in January, February, March, April, July, August, September, October, November, and December, 2009; January, May and June, 2010; and in August, September, and October, 2011.

40.     The daily maximum concentration permit limit for cadmium discharges is 4.86 µg/L.

41.     USIBWC violated the daily maximum concentration limit for cadmium discharges from Outfall 001 in January, May, June, and July, 2008; in January, March, July, August, September, October, and November, 2009; and in June, 2010.

42.     The monthly average mass (loading) permit limit for cadmium discharges is 0.158 kg/day.

43.     USIBWC violated the monthly average load for cadmium discharges from Outfall 001 in January, May, June, July, October, November, and December, 2008; in January, February, March, April, July, August, September, October, November, and December, 2009; in June, 2010; and in August, September, and October, 2011.

7

44.     The daily maximum mass (loading) permit limit for cadmium discharges is 0.317 kg/day.

45.     USIBWC violated the daily maximum (loading) limit for cadmium discharges from Outfall 001 in May and June, 2008; in March, July, August, September, October, and November, 2009.

46.     USIBWC has failed to take sufficient actions to prevent the illegal exceedances of the cadmium limits.

47.     A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions or discharge limits adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

48.     33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards, permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

<u>**COUNT TWO**</u>

<u>**FAILURE TO IDENTIFY SOURCES OF CADMIUM IN VIOLATION OF COMPLIANCE ORDER, SECTION III.B**</u>

49.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

50.     The Compliance Order, Section III.B, required USIBWC to submit to ADEQ by December 21, 2010, a written report identifying all sources of cadmium in the influent of the NIWTP.

51.     USIBWC has failed to provide a written report or information identifying all of the sources of cadmium in the influent to the NIWTP, which was discharging cadmium in excess of the discharge limits in AZPDES Permit No. AZ0025607.

52.     A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the

8

statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions or discharge limits adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

53.    33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**COUNT THREE**

**ILLEGALLY DISCHARGING CYANIDE
IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, PART I.A**

54.    The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

55.    AZPDES Permit No. AZ0025607, Part I.A, Table 1, establishes limits for cyanide discharges from Outfall 001.

56.    Cyanide is used in industrial processes and products including electroplating, metal cleaning, and pesticides.

57.    The monthly average concentration permit limit for cyanide discharges is 5.5 µg/L.

58.    USIBWC violated the monthly average concentration limit for cyanide discharges from Outfall 001 in May, 2008; in February, June, July, August, September, and December, 2009; in March, 2010; and in August, 2012.

59.    The daily maximum concentration permit limit for cyanide discharges is 16.9 µg/L.

60.    USIBWC violated the daily maximum concentration limit for cyanide discharges from Outfall 001 in May, 2008; in June, September, and December, 2009; in March, 2010; and in January, 2011.

61.    The monthly average mass (loading) permit limit for cyanide discharges is 0.358 kg/day.

62.     USIBWC violated the monthly average load limit for cyanide discharges from Outfall 001 in February, May, June, July, August, and September, 2009; in March, 2010; in January, 2011; and in August, 2012.

63.     The daily maximum mass (loading) permit limit for cyanide discharges is 1.10 kg/day.

64.     USIBWC violated the monthly maximum load limit for cyanide discharges from Outfall 001 in May, 2008; in June, September, and December, 2009; in March, 2010; and in January, 2011.

65.     USIBWC has failed to take sufficient actions to prevent the illegal exceedances of the cyanide limits.

66.     A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions or discharge limits adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

67.     33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**COUNT FOUR**

**ILLEGALLY DISCHARGING AMMONIA NITROGEN
IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, PART I.A**

68.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

69.     AZPDES Permit No. AZ0025607, Part I.A, Table 1, establishes limits for ammonia nitrogen discharges from Outfall 001.

70.     The daily maximum concentration permit limit for ammonia nitrogen was 8.4 mg/L through January 2009 when it was changed to meet the Arizona water quality standards for aquatic and wildlife, effluent dependent water ("A&W edw").

10

71.     USIBWC violated the daily maximum concentration limit for ammonia nitrogen discharges from Outfall 001 in the first, second, third, and fourth quarters of 2008; in the first quarter of 2009; and in April and November, 2010.

72.     The daily maximum mass (loading) permit limit for ammonia nitrogen discharges was 546.9 kg/day through January 2009 when it was changed to meet the Arizona water quality standard for A&W edw.

73.     USIBWC violated the daily maximum mass (loading) limit for ammonia nitrogen discharges from Outfall 001 in the first, second, third and fourth quarters of 2008; in the first quarter of 2009; and in November, 2010.

74.     USIBWC has failed to take sufficient actions to prevent the illegal exceedances of the ammonia nitrogen limits.

75.     A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions or discharge limits adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

76.     33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**COUNT FIVE**

**FAILURE TO IMPLEMENT A PRETREATMENT PROGRAM IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, PART V.A AND COMPLIANCE ORDER, SECTION III.C**

77.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

78.     Section V.A of AZPDES Permit No. AZ0025607 requires USIBWC to develop and implement pretreatment requirements for pollutants that may cause or contribute to "pass through" or "interference", or that may cause other problems described in 40 C.F.R. §§ 403.5.

11

79.     "Pass Through" is defined at 40 C.F.R. § 403.3(p) and is a discharge of pollutants that exits the POTW in quantities that cause a violation of the permit limits and conditions, such as the cadmium exceedances, alleged under Count One, and cyanide exceedances, alleged under Count Three, of this Complaint.

80.     The NIWTP has had "pass through" of other industrial pollutants, including copper permit limit exceedances in 2008, 2009 and 2011; silver permit limit exceedances and chromium permit limit exceedances in 2008; mercury permit limit and sulfide permit limit exceedances in 2009; and nickel exceedances in 2011.

81.     Interference is defined at 40 C.F.R. § 403.3(k) and is a disruptive effect on the treatment process and operations, which can cause ammonia nitrogen exceedances, alleged in Count Four of this Complaint.

82.     The NIWTP has had other "interferences" from industrial pollutants, including total suspended solids permit limit exceedances in 2008.

83.     Section V.A. of AZPDES Permit No. AZ0025607 required USIBWC, as part of its pretreatment program, to develop and implement mass influent objectives for industrial pollutants; complete studies to establish headworks allocations for the NIWTP; prepare and provide to ADEQ a report comparing the influent wastewater quality to the influent objectives and report the frequency and magnitude of any exceedances of the influent objectives; characterize exceedances of influent objectives and take appropriate action under law and international agreements to facilitate actions to eliminate the exceedances.

84.     The Compliance Order, Section III.C, required USIBWC to submit to ADEQ by December 21, 2010, a written description of the actions USIBWC would take to eliminate influent objective exceedances and meet the pretreatment requirements in AZPDES Permit No. AZ0025607, Part V.A.

85.     USIBWC has failed to complete the pretreatment program requirements in Compliance Order, Section III.C, and AZPDES Permit No. AZ0025607, Section V.A.

For instance, USIBWC failed to develop and implement a pretreatment program with influent objectives (AZPDES Permit, Section V.A.1.b.i), failed to complete and submit to ADEQ reports comparing influent quality to the influent objectives and reporting frequency and magnitude of exceedances (AZPDES Permit, Section V.A.1.b.ii), and failed to undertake actions to eliminate exceedances of the influent objections (AZPDES Permit, Section V.A.1.e.iii).

86.     A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions,  discharge limits or order issued or adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

87.     33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

### COUNT SIX

### FAILURE TO ADEQUATELY SAMPLE AND MONITOR BIOSOLIDS TO ENSURE BIOSOLIDS DO NOT EXCEED POLLUTANT CEILING CONCENTRATIONS IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, SECTION III

88.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

89.     Biosolids are defined as non-hazardous sewage sludge, pursuant to 40 C.F.R. Part 503.9, A.A.C. § R18-9-1001(7) and AZPDES Permit No. AZ0025607, Section III.

90.     Pursuant to AZPDES Permit No. AZ0025607, Section III, biosolids generated by the USIBWC may be beneficially used and placed on the land.  However, pursuant to AZPDES Permit No. AZ0025607, Section III, USIBWC shall not sell, give

13

away, deposit on the ground, or land apply biosolids that exceed the ceiling concentrations contained in the permit, Section III.

91.    USIBWC generates biosolids during the sewage treatment process at NIWTP.

92.    USIBWC has land applied its biosolids under the authority of AZPDES Permit No. AZ0025607.

93.    AZPDES Permit No. AZ0025607, Section III.I.2.a, states that for biosolids being land applied, the ceiling concentration or limit for cadmium is 85 mg/Kg dry weight.

94.    USIBWC generated and land applied biosolids that exceeded the ceiling concentration for cadmium in violation of AZPDES Permit No. AZ0025607, Section III.

95.    Based on sampling records, USIBWC is known to  have generated biosolids exceeding the ceiling concentration on May 11, August 4, October 9, and December 7, 2009; February 17, April 9, June 3, and August 5, 2010.

96.    On August 6, 2010, USIBWC notified ADEQ that biosolids land applied offsite had cadmium concentration of 174 mg/Kg dry weight.

97.    A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions, discharge limits or order issued or adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

98.    33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

///

///

///

**COUNT SEVEN**

**FAILURE TO IDENTIFY SOURCES OF POLLUTANTS IN BIOSOLIDS AND TAKE APPROPRIATE SOURCE CONTROL MEASURES FOR BIOSOLIDS EXCEEDING LIMITS IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, SECTION III**

99.     The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

100.    Pursuant to AZPDES Permit AZ0025607, Section III, if any pollutant concentration in the biosolids exceeds the ceiling concentration for cadmium, then the permittee must identify the source of the pollutants and take appropriate source control measures.

101.    USIBWC failed to identify the sources of pollutants and take appropriate source control measures and failed to submit to ADEQ a written report identifying cadmium sources, in violation of AZPDES Permit AZ0025607, Section III, and Compliance Order, Section III.b.

102.    A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions,  discharge limits or order issued or adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

103.    33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**COUNT EIGHT**

**FAILURE TO COMPLY WITH REPORTING AND NOTIFICATION REQUIREMENTS IN VIOLATION OF AZPDES PERMIT NO. AZ0025607, SECTIONS II.C and III**

104.    The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

15

105.    AZPDES Permit AZ0025607, Sections II.C and III, require USIBWC to timely notify of any non-compliance with the permit or with the provisions of A.A.C. Title Chapter 9, Article 10.

106.    USIBWC failed to timely notify ADEQ of any of USIBWC's violations including the cadmium exceedances and all of the violations alleged in this Complaint and the violations alleged under the Compliance Order.

107.    A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions,   discharge limits or order issued or adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

108.    33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**COUNT NINE**

**ILLEGAL DISCHARGE FROM INTERNATIONAL OUTFALL INTERCEPTOR IN VIOLATION OF A.R.S. § 49-255.01**

109.    The State incorporates by reference and realleges the foregoing Paragraphs as though fully set forth herein.

110.    A.R.S. § 49-255.01 prohibits the discharge of pollutants unless in conformance with an AZPDES/NPDES permit issued by ADEQ or the US EPA.

111.    The IOI has deteriorated over time and has developed cracks and structural problems that allow discharge of sewage and other related wastewater.

112.    During storm events, with increased flows through the Nogales Wash, stormwater flowing through the wash intermingles with untreated wastewater that escapes from the IOI and discharges into the Nogales wash, a tributary of the Santa Cruz River, which is a water of the United States.

113.    USIBWC has violated A.R.S. § 49-255.01 by continuously discharging untreated sewage from the IOI into the Nogales Wash during storm events and at other

times.  USIBWC discharged untreated sewage during storm events and at other times in 2007, 2008, 2009, 2010 and 2011.  This violation remains on-going.

114.    A.R.S. § 49-262 authorizes the imposition of civil penalties and injunctive relief if a person or business entity engages in practices that constitute violations of the statutory provisions in A.R.S. Title 49, Chapter 2, Article 3, or violations of rules, permit conditions,   discharge limits or order issued or adopted pursuant to A.R.S. Title 49, Chapter 2, Article 3.

115.    33 U.S.C. § 1365(a) authorizes the enforcement of effluent standards and limitations, pretreatment standards permits and permit conditions, and compliance orders and authorizes the imposition of civil penalties.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Impose injunctive relief necessary for the protection of the public health and the environment pursuant to A.R.S. §§ 49-262, 354, 462 and 33 U.S.C. § 1365; and

B.    To assess prospective civil penalties, to ensure future compliance against Defendants in amounts not to exceed $25,000 per day per violation, pursuant to § 49-262, for the violations alleged in each of the counts;

C.    Award the State its attorneys fees and costs pursuant to A.R.S. § 49-262(D) and 33 U.S.C. § 1365(d); and

D.    Grant such other and further relief as the Court deems just, necessary and proper.

**RESPECTFULLY SUBMITTED** this 28th day of May, 2013.


THOMAS C. HORNE
Attorney General


/s/ Curtis A. Cox
Curtis A. Cox
Assistant Attorney General
Attorneys for Plaintiff

#3329044v2

17

**VERIFICATION**

STATE OF ARIZONA     )
                        )ss.
County of Maricopa     )

     Michael A. Fulton, being first duly sworn upon his oath, deposes and says:

     1.     I am the Director of the Arizona Department of Environmental Quality, Water Quality Division, and have been delegated the authority to verify Complaints by the Director of the Department.

     2.     I have read the foregoing First Amended Complaint, know the contents thereof, and that on my own knowledge and belief, the matters alleged herein are true, except for those matters alleged on information and belief, and as to those matters, I believe the First Amended Complaint to be true.

 

_____
Michael A. Fulton, Director
Water Quality Division
Arizona Department of Environmental Quality

SUBSCRIBED AND SWORN TO before me this 21ˢᵗ day of _____May_____, 2013.

_____
Notary Public   May 21, 2013
My Commission Expires:

MARY A. MAAS
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires
October 10, 2016

#3329044v2

Exhibit A

**BEFORE THE DIRECTOR OF THE**
**ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY**

| | |
|---|---|
| In the Matter of: | )   **COMPLIANCE ORDER** |
| | ) |
| Nogales International Wastewater Treatment Plant | ) |
| located at 865 Rio Rico Industrial Park Rio Rico | ) |
| Santa Cruz County, Arizona | )   **Docket No.**   P-73-10 |
| | ) |
| ADEQ Identification Number: 100620 | ) |
| | ) |
| | ) |

**To:**   United States Section, International Boundary and Water Commission (USIBWC) in its capacity as owner and/or operator of Nogales International Wastewater Treatment Plant (NIWTP) located at 865 Rio Rico Industrial Park, Rio Rico, Santa Cruz County, Arizona.

**RECITALS**

The Director of the Arizona Department of Environmental Quality (ADEQ) has determined that United States Section, International Boundary and Water Commission is in violation of the Arizona Revised Statutes (A.R.S.), the rules adopted pursuant to the A.R.S., or a permit issued pursuant to the A.R.S. As a result, the Director is issuing this Order requiring compliance within a reasonable time as specified below.

**I. AUTHORITY**

The Director is authorized to issue this Order pursuant to A.R.S. § 49-261.

**II. NATURE OF VIOLATIONS**

The Director has reason to believe that USIBWC has violated the following provisions set forth in the A.R.S., or the Arizona Administrative Code (A.A.C.):

A.      **Permit 39800 (AZ0025607) – Part I(A)**

**The Permittees shall limit and monitor discharges from Outfall 001 as specified in Table 1. Effluent limitations are expressed in mass limits and concentration limits. The concentration limit of the monthly average for cadmium is 2.42 ug/L.**

Discharge Monitoring Reports (DMRs) submitted by USIBWC to ADEQ from January 2008 through June 2010 indicate deviations from limits for total recoverable cadmium in the effluent discharged to the Santa Cruz River which represent violations of the permit. The concentration limit of the monthly average was exceeded for the following sampling events: May 1, 2008 (5.7 ug/L); June 2, 2008 (5.8 ug/L); July 1, 2008 (3.6 ug/L); October 1, 2008 (3.6 ug/L); November 3, 2008 (3.05 ug/L); December 1, 2008 (3.5 ug/L); January 1, 2009 (3.43 ug/L); February 2, 2009 (3.6 ug/L); March 2, 2009 (4.8 ug/L); July 1, 2009 (4.9 ug/L); August 3, 2009 (5.25 ug/L); September 1, 2009 (8 ug/L); October 1, 2009 (6.55 ug/L); November 2, 2009 (8.1 ug/L); December 1, 2009 (3.3 ug/L); May 3, 2010 (3 ug/L); and June 1, 2010 (3.7 ug/L).

B.  **Permit 39800 (AZ0025607) – Part II (B) Reporting of Monitoring Reports**

**1.      The permittees shall report monitoring results on Discharge Monitoring Reports (DMR) forms supplied by ADEQ, to the extent that the results may be entered on the forms. The permittees shall submit (see Appendix A, Part B – Definitions) DMRs by the 28th day of the month following the end of any given monitoring period.**

**9. If the information below is not provided on the laboratory reports required in Part II Section B.1, the permittees shall attach a report to each DMR that includes the following for all analytical results during the reporting period:**

**a.      The analytical result.**

**b.      The number or title of the approved analytical method, preparation and analytical procedure utilized by the laboratory and method-specific MDL or method-**

1  specific ML of the analytical method for the pollutant.  When no method-specific ML

2  exists, the laboratory derived ML shall be reported.

3          c.      The levels at which any results are reported as either *NODI (B)* or

4  *NODI (Q).*

5          ADEQ issued a NOV to USIBWC on October 29, 2008 for failing to submit the DMR for

6  the month of April 2008 in a timely manner. The NOV also noted that, in general, USIBWC

7  submits DMRs that are incomplete or outside of the time frame allowed in the permit. USIBWC

8  continues to submit DMRs that are incomplete and outside of the time frame allowed in the

9  permit, most recently submitting the DMRs for July and August 2010 in October 2010, more

10  than thirty days after the end of the monitoring period.  USIBWC failed to report monitoring for

11  ammonia nitrogen during the 4th quarter of 2009 and the 1st quarter of 2010.  In addition,

12  USIBWC failed to submit laboratory analytical results for the July and August 2010 DMRs and

13  did not identify the levels at which eight different monitoring parameters (ammonia nitrogen,

14  cyanide, selenium, silver, lead, total recoverable chromium, copper and dissolved hexavalent

15  chromium) were reported as NODI (B) (EPA code indicating monitoring result was below the

16  detection limit of the test method used) for two consecutive months of monitoring.

17      C.  Permit 39800 (AZ0025607) – Part IV(B)

18      1.      The permittees shall conduct short-term chronic toxicity tests on three

19  species: the waterflea, *Ceriodaphnia dubia* (survival and reproduction test); the fathead

20  minnow, *Pimephales promelas* (larval survival and growth test);  and the green alga,

21  *Selenastrum capricornutum* (growth test) at the frequencies required in Part I and Part V

22  Section B of this permit.

23      2.      The permittees must follow the EPA 4th edition manual, "Short-Term

24  Methods for Estimating the Chronic Toxicity of Effluents and Receiving Waters to

25  Freshwater Organisms" (EPA/821-R-02-013) for all chronic compliance toxicity testing.

- 3 -

1      **3.**    **The chronic toxicity limits and action levels are any one test result greater**

2    **than 1.6 TUc or any monthly median value greater that 1.0 TUc. If a limit or action level is**

3    **exceeded, follow-up testing is required per Part IV Section D.  A chronic toxicity unit (TUc)**

4    **shall be calculated as TUc = 100/NOEC.**

5      **4.**    **The chronic WET test shall be conducted using a series of five dilutions and**

6    **a control. The following dilution series must be used: 12.5, 25, 50, 75, and 100% effluent.**

7      The Whole Effluent Toxicity (WET) test results submitted by USIBWC from

8    May 2008 through June 2010, indicate the chronic toxicity limits set forth in AZPDES Permit

9    No. AZ0025607 were exceeded for the following sampling events: May 1, 2008 (4.0 TUc); June

10    30, 2008 (2.0 TUc); September 30, 2008 (1.33 TUc monthly median value); December 31, 2008

11    (1.3 TUc monthly median value); May 31, 2009 (1.33 TUc monthly median value); and June 30,

12    2010 (8.0 TUc)

13    D.  **Permit 39800 (AZ0025607) – Part IV (D)**

14    **If chronic toxicity is detected above a limit or action level specified in Part I . . . the**

15    **permittees shall begin additional toxicity monitoring.  If toxicity is detected in the follow-**

16    **up, the permittees shall immediately begin developing a TRE plan and submit the plan to**

17    **ADEQ for review and approval.**

18      USIBWC has not conducted follow-up testing and/or the Toxicity Identification

19    Evaluation (TIE) or Toxicity Reduction Evaluation (TRE) process described in the permit for the

20    WET failures for *Pimephales promlas* and *Ceriodaphnia dubia* reported on June 30, 2010.

21    E.  **Permit 39800 (AZ0025607) – Part III (I)(10)**

22    **The permittees shall test generated biosolids at least annually, and more frequently**

23    **as necessary, to determine if biosolids are hazardous in accordance with 40 CFR Part 261.**

24      USIBWC made its 2009 annual determination that its biosolids were non-

25    hazardous in January of 2009, by taking a sample from a lagoon which contained biosolids

- 4 -

1   generated and stored at the NIWTP prior to 2008.  IBWC began operation of an upgraded

2   NIWTP in May 2009, including operation of a biosolids belt press so biosolids could be shipped

3   off-site for land application.  In addition, USIBWC experienced higher levels of total recoverable

4   cadmium in its effluent beginning in 2008.  These circumstances necessitated another hazardous

5   waste determination in 2009 from the belt press, which, according to ADEQ records, was not

6   performed.

7       **F.  Permit 39800 (AZ0025607) – Part III (K)(1)(a)**

8           **The permittees shall notify ADEQ of any non-compliance with this permit or with**

9   **the provisions of A.A.C. Title 18, Chapter 9, Article 10, which may endanger health or the**

10  **environment. The permittees shall provide the information orally within 24 hours from the**

11  **time the permittees becomes aware of the circumstances.**

12          USIBWC did not notify ADEQ of the cadmium ceiling exceedances in the

13  biosolids generated at the NIWTP within 24 hours of becoming aware of them for the following

14  sampling events: August 5, 2010 (lab report dated August 16, 2010); June 3, 2010 (June 18,

15  2010); April 9, 2010 (May 6, 2010); February 17, 2010 (March 15, 2010); December 7, 2009

16  (January 8, 2010); October 9, 2009 (November 9, 2009); August 4, 2009 (August 21, 2009); and

17  May 11, 2009 (June 1, 2009).

18      **G.  Permit 39800 (AZ0025607) – Part III (I)(9)**

19      **a.   The permittees shall submit within 180 days of permit issuance, a**

20  **Management Plan (Plan) for the on-site management operations.  This Plan shall detail**

21  **how sludge/biosolids are managed from the time that they are generated at the facility until**

22  **they are shipped off-site.  The Plan must give specific protocols to be followed to ensure**

23  **that the material generated at this facility will consistently meet all applicable requirements**

24  **at A.A.C. Title 18, Chapter 9, Article 10 and CFR Part 503, Subpart C and the provisions**

25

1   of this permit.  The permittees shall submit a revised Management Plan by March 31, 2009

2   that addresses biosolids management for the upgraded plant.

3       b.      The Plan must address issues of potential concern such as storage areas; run-

4   off; odor and dust control; and include a professional diagram of facilities/areas used in the

5   operation and the area surrounding the operation. The plan shall also specify how and

6   when representative samples of biosolids will be taken. The permittees shall also have a

7   contingency plan for managing sludge when pathogens or pollutant levels are exceeded.

8       c.      ADEQ will review the Management Plan and once approved by ADEQ, the

9   permittees shall follow this plan for the remainder of the permit term, unless revisions are

10   approved in writing by ADEQ prior to implementation.

11       ADEQ received a Management Plan prepared by Avragrow Systems, Inc. on behalf of

12   USIBWC in 2005, but has not received a revised Management Plan prepared by or on behalf of

13   USIBWC for the on-site management operations as specified in Permit 39800 (AZ0025607)

14   issued December 24, 2007.  Since 2005 USIBWC changed its method of biosolids disposal to

15   land application and upgraded the NIWTP to include a change in biosolids processing through a

16   belt press.  However, USIBWC has not revised its Management Plan to reflect or respond to

17   these changes.

18       H.      Permit 39800 (AZ0025607) – Part III (K)(4)

19       If within a given monitoring period, biosolids do not meet any of the Monthly

20   Average Pollutant Concentration limits, the permittees must notify the ADEQ biosolids

21   Coordinator and any contractors that will be handling the biosolids. The permittees shall

22   ensure that its high metal biosolids will not be applied to a site if it could cause any of the

23   cumulative metals loadings to be exceeded per A.A.C. R18-9-1005(D)(2).

24       USIBWC received laboratory verification that the biosolids exceeded limits for cadmium

25   in a report dated June 1, 2009. IBWC did not notify ADEQ that their biosolids exceeded the

- 6 -

1   Monthly Average Pollutant Concentration for cadmium until August 4, 2010. More recently,

2   USIBWC received laboratory verification that the biosolids exceeded ceiling concentrations for

3   cadmium in a report dated June 18, 2010. On July 27, 2010, IBWC requested that its laboratory

4   re-analyze the sample without prior notification to ADEQ.

5        I.   **Permit 39800 (AZ0025607) Part III (I)(4)**

6        **If biosolids have been accumulated on-site, the permittees shall develop a sampling**

7   **plan to characterize those sludges. The plan shall detail the number of samples to be taken**

8   **and the location of sampling points that will enable samples that are representative of the**

9   **biosolids in each on-site pile or windrow to be collected. For biosolids to be shipped off-site**

10  **as Class A or EQB, the plan must address sampling of each windrow or pile separately and**

11  **include at least 1 sample for each 0-290 dry metric ton increments. More sampling is**

12  **appropriate when the biosolids are inconsistent in nature or non-uniformly treated. The**

13  **permittees must collect and analyze representative samples per the sampling plan before**

14  **shipment off-site.**

15       ADEQ has not received a revised sampling plan from USIBWC to characterize the

16  biosolids stored on-site.  USIBWC also has not prepared a revised sampling plan to reflect the

17  inconsistent nature of its biosolids due to increasing levels of cadmium and other metals in the

18  effluent from the NIWTP.

19       J.   **Permit 39800 (AZ0025607) – Part III (L)**

20       **The permittees shall submit an annual biosolids report to the ADEQ Biosolids**

21  **Coordinator by February 19 of each year for the period covering the previous calendar**

22  **year.**

23       ADEQ has no record of receiving the USIBWC 2009 biosolids annual report.

24       K.   **Permit 39800 (AZ0025607) – Part III (I)(2)(c)(ii)**

25

- 7 -

1    If any pollutant concentration exceeds the Ceiling Concentration, the permittees

2 must identify the source of the pollutants and take appropriate source control measures.

3    USIBWC has not taken appropriate source control measures to address the cadmium

4 exceedances in the biosolids generated at the NIWTP.

5    **L.  Permit 39800 (AZ0025607) – Part V (A)(1)(d)**

6    i.    Each month, the USIBWC shall provide a written report to the Mexican

7 Section of the IBWC (MXIBWC) as well as to the U.S. EPA individually comparing the

8 Mexican and U.S. influent quality to the influent objectives in terms that are suitable for an

9 executive audience, including a discussion of the monitoring results and clearly

10 representing data in visual means such as graphs.  The report shall characterize the

11 frequency and magnitude of any exceedances of the influent objectives.  This report shall

12 not consist of only a transmittal of unanalyzed, raw data.

13    ii.   Each report under Part V Section A.1.d.i shall be for the signature of the

14 Commissioner of USIBWC or designee and submitted to the Commissioner of the

15 MXIBWC as well as the ADEQ Pretreatment Coordinator within 60 days of the sampling

16 date.

17    USIBWC has failed to submit to the ADEQ Pretreatment Coordinator copies of any

18 written reports as submitted to the Mexican Section of the IBWC (MXIBWC).

19    **M.  Permit 39800 (AZ0025607) – Part V (A)(1)(e)**

20    The USIBWC, in coordination with EPA, shall undertake appropriate action under

21 U.S. law and applicable international agreements to arrive at cooperative United States-

22 Mexico agreements to facilitate actions in Mexico that will seek to eliminate exceedances of

23 the influent objectives before the end of this permit's five-year term.

24    AZPDES Permit 39800 (AZ0025607) was issued on December 24, 2007 and expires on

25 December 24, 2012.  Exceedances of influent objectives, most notably cadmium, have existed

- 8 -

1  since January 2008.  Upon information and belief, to date USIBWC has failed to undertake

2  appropriate action to arrive at cooperative United States-Mexico agreements to eliminate

3  exceedances of the influent objectives from Mexico.

4  ### III.  COMPLIANCE SCHEDULE

5  **IT IS ORDERED** that USIBWC achieve compliance by taking the specific actions set forth

6  below:

7        A.      Within sixty (60) calendar days after the effective date of this Order, USIBWC

8  shall submit analytical results which demonstrate that the concentration limit of the monthly

9  average of total recoverable cadmium in the effluent discharged to the Santa Cruz River is below

10  the limit prescribed in AZPDES Permit 39800 (AZ0025607).   Analytical results are to be

11  submitted to the Arizona Department of Environmental Quality, Water Quality Compliance Data

12  Unit, 1110 West Washington Street, Phoenix, Arizona 85007 MC: 5415B-1 in addition to the

13  contact listed in Section VII of this Order. Submitting results for sampling performed in response

14  to this Order will not alter the monitoring and reporting requirements established in the permit.

15        B.      Within sixty (60) calendar days after the effective date of this Order, USIBWC

16  shall submit a written report to ADEQ identifying all sources of cadmium in the influent of the

17  NIWTP.

18        C.      Within sixty (60) calendar days after the effective date of this Order, USIBWC

19  shall submit a written description of the appropriate actions USIBWC will undertake under U.S.

20  law and applicable international agreements to arrive at cooperative United States-Mexico

21  agreements to facilitate actions in Mexico that will seek to eliminate influent objective

22  exceedances.  In addition, within sixty (60) calendar days after the effective date of this Order,

23  USIBWC shall submit copies of all written reports from the USIBWC to the Mexican Section of

24  the IBWC prepared since the date AZPDES Permit 39800 (AZ0025607) was issued.

25

- 9 -

D.      Within thirty (30) calendar days of the effective date of this Order, USIBWC shall resubmit all DMRs with missing parameters or missing documentation submitted during the period of January 2010 through September 2010, including values for the missing parameters and the appropriate laboratory documents and other documentation required by AZPDES Permit 39800 (AZ0025607) – Part II (B).  Submitting documents in response to this Order will not alter the monitoring and reporting requirements established in the permit.

E.      Within fourteen (14) calendar days of effective date of this Order, USIBWC shall begin additional toxicity monitoring using the same test and species as the failed toxicity test reported June 30, 2010.  If toxicity is detected in the additional toxicity monitoring, USIBWC shall immediately begin developing a TRE plan and submit the plan to ADEQ for review and approval within thirty (30) days after receipt of the toxic result.  Requirements for the development of a TRE are identified in AZPDES Permit 39800 (AZ0025607) Part IV(D)(3) and (4).

F.      Within fifteen (15) calendar days of the effective date of this Order, USIBWC shall submit a sampling plan, subject to ADEQ approval, for the biosolids generated at USIBWC and taken from the belt press. At a minimum the sampling plan shall include all parameters required in AZPDES Permit 39800 (AZ0025607) and a description of the method, location and frequency of sampling events.

G.      Within thirty (30) calendar days of the effective date of this Order, USIBWC shall submit analytical results of a representative sample of biosolids taken from the belt press that demonstrates that the biosolids are not hazardous pursuant to 40 C.F.R. § 261. All analytical results are to be analyzed by a laboratory certified by the Arizona Department of Health Services (ADHS) to perform the applicable analysis.

- 10 -

1      H.     Within sixty (60) calendar days after the effective date of this Order, USIBWC

2 shall submit the 2009 Biosolids Annual Report with all analytical data required by AZPDES

3 Permit 39800 (AZ0025607).

4      I.     Within sixty (60) calendar days after the effective date of this Order, USIBWC

5 shall prepare and submit to ADEQ a Management Plan (Plan) pursuant to the requirements of

6 AZPDES Permit 39800 (AZ0025607) for the on-site management of biosolids at the upgraded

7 plant. The Plan must address issues of potential concern such as storage areas; run-off; odor and

8 dust control; and include a professional diagram of facilities/areas used in the operation and the

9 area surrounding the operation.   The Plan shall also specify how and when representative

10 samples of biosolids will be taken.   The permittees shall also have a contingency plan for

11 managing sludge when pathogens or pollutant levels are exceeded.

12      J.     Until such time as USIBWC shall complete the requirements of Section III(F)

13 through (I) of this Compliance Order, USIBWC shall not remove any biosolids generated at the

14 NIWTP from the NIWTP facility.   Within thirty (30) of completion of the requirements of

15 Section III(F) through (I) of this Compliance Order, USIBWC shall submit a written request to

16 ADEQ to implement the Management Plan referenced in Section III(I) for biosolids disposal.

17 Upon approval by ADEQ of the Management Plan, USIBWC may remove the biosolids from the

18 NIWTP in accordance with the approved Management Plan.

19    **IV.  RIGHT TO  HEARING AND INFORMAL SETTLEMENT CONFERENCE**

20      A.     USIBWC has a right to a hearing before an administrative law judge to contest

21 this Order, provided that a notice of appeal or request for hearing is made within thirty (30)

22 calendar days of receipt of this Order.   A notice of appeal or request for hearing must be in

23 writing and must specifically identify those portions of this Order which are contested.

24      B.     USIBWC has a right to request an informal settlement conference pursuant to

25 A.R.S. § 41-1092.06, provided there has been a timely request for hearing.   A request for an

- 11 -

1   informal settlement conference must be filed with ADEQ no later than twenty (20) calendar days

2   before the hearing.

3          C.      All notices of appeal, requests for hearing, and requests for an informal settlement

4   conference must be submitted to ADEQ in writing at the following address:

5          Arizona Department of Environmental Quality
         Office of Administrative Counsel
6          Attention: Hearing Administrator
         1110 West Washington Street
7          Phoenix, Arizona 85007-2935

8                          **V. ENFORCEMENT OF ORDER**

9   This Order becomes final and enforceable in Superior Court within thirty (30) calendar days of

10  receipt, unless a hearing is properly requested as set forth above.  As a result, the effective date

11  of this Order is thirty (30) calendar days from the date of receipt, or if this Order is appealed as

12  set forth above, the date that USIBWC receives the Director's final decision on the appeal.

13                          **VI. VIOLATION OF ORDER**

14  Failure to comply with this Order once effective may subject USIBWC to further administrative

15  or judicial sanctions including, but not limited to, significant civil penalties under A.R.S. § 49-

16  262.

17                          **VII. CORRESPONDENCE**

18  All invoices, photographs, logs, laboratory analyses, sealed engineering plans, technical

19  drawings, permits or any other document(s) necessary to establish compliance or required by this

20  Order must be mailed or hand delivered to the following address:

21         Arizona Department of Environmental Quality
         Water Quality Division
22         Attention: Cristian Kistemann, Case Manager, WQCEU
         1110 West Washington Street
23         Phoenix, Arizona 85007-2935
         Telephone: (602) 771-4652
24         Email: Kistemann.cristian@azdeq.gov

25

                                   - 12 -

1   Any such correspondence shall be deemed submitted when received by the ADEQ at the above

2   address.

3                        **VIII.  RESERVATION OF RIGHTS**

4   By issuing this Order the Arizona Department of Environmental Quality does not waive its right

5   to seek appropriate penalties or injunctive relief in superior court for violations of the Arizona

6   Revised Statutes, any rule, permit, or order promulgated or issued thereunder, or any other

7   applicable environmental statute or legal authority.

8   **ISSUED** this 22nd day of _October_ , 2010.

9

10

11   Michael A. Fulton, Director
     Water Quality Division

12   Arizona Department of Environmental Quality

13

14

15

16

17

18

19

20

21

22

23

24

25

- 13 -

1 | **ORIGINAL** of the foregoing Compliance Order was sent certified mail, return receipt requested, this 22nd day of _October_, 2010, to:

2

Commissioner Edward Drusina

3 | International Boundary and Water Commission
United States Section

4 | 4171 North Mesa, Suite C-100
El Paso, Texas  79902-1441

5

**COPY** of the foregoing Compliance Order was filed this 22nd day of _October_, 2010, with:

6

Arizona Department of Environmental Quality

7 | Office of Administrative Counsel
Attention: Hearing Administrator

8 | 1110 West Washington Street
Phoenix, Arizona  85007-2935

9

**COPIES** of the foregoing Compliance Order were sent by regular/interdepartmental mail, this

10 | 22nd day of _October_, 2010, to the following:

11 | United States Section, International Boundary and Water Commission
Attention: John Light

12 | P.O. Box 4063
Rio Rico, Arizona 85648-4063

13

Mark Horlings, Civil Unit Chief

14 | Environmental Enforcement Section
Office of the Attorney General

15 | 1275 West Washington Street
Phoenix, Arizona 85007

16

William Ellett, Acting Director, SRO

17 | Marcia Colquitt, Manager, WQCEU
Daniel Czecholinski, Manager, WQCAU

18 | Cynthia Campbell, Manager, WQCS
Cristian Kistemann, Case Manager, WQCEU

19

Santa Cruz County Health & Human Services

20 | Kevin J. Irvine, Director
2150 N. Congress Street

21 | Nogales, AZ 85621

22 | Ken Greenberg, Chief
CWA Compliance Office (WTR-7)

23 | U.S. EPA, Region IX
75 Hawthorne Street

24 | San Francisco, CA 94105

25

- 14 -