1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**
7               **FOR THE DISTRICT OF ARIZONA**
8
9    State of Arizona, *et al*.,
                                              No. CV-12-00644-TUC-FRZ (DTF)
10                      Plaintiffs,
     v.                                       **REPORT AND**
11                                            **RECOMMENDATION**
     International    Boundary    and    Water
12   Commission, United States Section, *et al*.,
13                      Defendants and Third-
                         Party Plaintiffs,
14   v.
15   City of Nogales, Arizona,
16                      Third-Party Defendant.
17
18
19          Pending before the Court is Plaintiff State of Arizona's Partial Motion for
20   Summary Judgment: Liability for Counts 2, 5, 6, 7, 8, and 9, with accompanying
21   statement of facts. (Docs. 45, 46.) Defendant International Boundary and Water
22   Commission, United States Section (USIBWC), responded to the motion and statement
23   of facts. (Docs. 56, 57.) Plaintiff replied and submitted a supplemental statement of facts,
24   to which USIBWC replied, and Third-Party Defendant City of Nogales submitted an
25   Objection to USIBWC's Response to Plaintiff's Statement of Facts. (Docs. 60-64.)
26   Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate
27   Judge Ferraro for a report and recommendation. Magistrate Judge Ferraro heard oral
28   argument on June 8, 2015, after which he took the matter under advisement. The
     Magistrate recommends the District Court, after its independent review of the record,

1  enter an order granting in part and denying in part Plaintiff's motion for partial summary

2  judgment.

3                           **FACTUAL BACKGROUND AND LAW**

4            **The Clean Water Act**

5            The Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq*., was passed in 1972 "to

6  restore and maintain the chemical, physical, and biological integrity of the Nation's

7  waters." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc*., 484 U.S. 49, 52

8  (1987) (quoting 33 U.S.C. § 1251(a)). To achieve this objective:

9            [section] 301(a) of the [CWA] makes unlawful the discharge of any
           pollutant into navigable waters except as authorized by specified sections of
10           the [CWA]. 33 U.S.C. § 1311(a).

11           One of these specified sections is § 402 which establishes the National
           Pollutant Discharge Elimination System (NPDES). 33 U.S.C. § 1342.
12           Pursuant to § 402(a), the Administrator of the Environmental Protection
           Agency (EPA) may issue permits authorizing the discharge of pollutants in
13           accordance with specified conditions. 33 U.S.C. § 1342(a).

14  *Id.* Pursuant to § 402(b) of the CWA, each State may create its own permit program that

15  conforms to federal guidelines, if it is approved by the EPA. *Gwaltney*, 484 U.S. at 52

16  (citing 33 U.S.C. §1342(b)). The State of Arizona has established a federally approved

17  state NPDES program (AZPDES permit program) which is administered by the Arizona

18  Department of Environmental Quality (ADEQ). Ariz. Rev. Stat. §§ 49-203(A)(2), 49-

19  255.01; Ariz. Admin. Code § R18-9-A901 *et seq*.

20           A permittee is legally bound to meet the specific effluent limitations, conditions,

21  and other standards established by its NPDES permit. *Hawaii's Thousand Friends v. City*

22  *and Cnty of Honolulu*, 821 F. Supp. 1368, 1391 (D. Haw. 1993) (citing *Sierra Club v.*

23  *Union Oil Co. of Cal.*, 813 F.2d 1480, 1483 (9th Cir. 1987), *vacated on other grounds*,

24  485 U.S. 931 (1988), *judgment reinstated*, 853 F.2d 667 (9th Cir. 1988)). The CWA and

25  Arizona impose strict liability for violations of NPDES permits. Ariz. Rev. Stat. § 49-

26  261; 40 C.F.R. § 122.41(a)(2). ADEQ may issue an order requiring compliance if it

27  determines a person is in violation of a discharge limitation or other permit condition.

28  Ariz. Rev. Stat. § 49-261(A). The director may bring an enforcement action for a

compliance order or a violation of an NPDES permit. Ariz. Rev. Stat. §§ 49-261(E), 49-262.

**USIBWC's AZDPES Permit**

The Nogales International Wastewater Treatment Plant (NIWTP) is located in Rio Rico, Arizona and treats wastewater from Santa Cruz County, Arizona and Nogales, Sonora, Mexico. (Doc. 46, Ex. 5 at 1.) Wastewater from Nogales, Sonora travels from the border to the NIWTP through a pipeline known as the International Outfall Interceptor (IOI). (Doc. 23, ¶ 20; Doc. 24, ¶ 20.) In 2006, USIBWC and the City of Nogales applied for the AZDPES permit for the NIWTP that is at issue in this case. (Doc. 23, ¶ 24; Doc. 24, ¶ 24.) The permit was issued effective December 24, 2007 (2007 Permit), and allowed the discharge of treated wastewater from the NIWTP into a tributary of the Santa Cruz River. (Doc. 46, Ex. 5.) On October 22, 2010, ADEQ issued a Compliance Order to USIBWC setting forth numerous violations of the 2007 Permit and ordering USIBWC to take specific actions in response. (Doc. 23, Ex. A.) Upon application, ADEQ issued a new permit to USIBWC and the City of Nogales for the NIWTP, effective March 31, 2014 (2014 Permit). (Doc. 46, Ex. 6.)

**DISCUSSION**

The Amended Complaint contains nine claims. (Doc. 23.) The Court has granted a motion for judgment on the pleadings as to Claims 1, 3, and 4. (Doc. 35.) Plaintiff now seeks summary judgment as to liability on the remaining allegations, Claims 2 and 5-9.

**Summary Judgment Standard**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those

1    "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S.

2    at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return

3    a verdict for the nonmoving party." *Id.*

4    **Claim 2**

5    Plaintiff alleges USIBWC failed to comply with the October 22, 2010 Compliance

6    Order, Section III.B, which requires "[w]ithin sixty (60) calendar days after the effective

7    date of this Order, USIBWC shall submit a written report to ADEQ identifying all

8    sources of cadmium in the influent of the NIWTP." (Doc. 23, Ex. A at 9.) In response to

9    Claim 2, "USIBWC admits that it has not provided a written report or information

10   identifying all of the sources of cadmium influent to NIWTP." (Doc. 24, ¶ 51.)

11   USIBWC argues that the 2007 Permit does not require it to identify the sources of

12   cadmium in Mexico, nor does it have the legal authority or practical ability to do so.

13   First, the Court looks at the language of the permit. The Compliance Order recites

14   violations regarding excessive cadmium in the effluent and the biosolids of the NIWTP.

15   (Doc. 23, Ex. A at 2, 8.) Section III.I.2.c.ii of the permit provides that if a pollutant

16   concentration in the plant's biosolids exceeds the ceiling concentration, the permittees

17   must "[i]dentify the source of the pollutants and take appropriate source control

18   measures." (Doc. 46, Ex. 5 at 22.) Thus, the permit does provide for the identification of

19   sources as required by the Compliance Order. Next, the Court evaluates USIBWC's

20   contention that is practically and legally unable to comply with this requirement.

21   USIBWC cites no legal authority for its "impossibility" defense. Because the CWA is a

22   strict liability statute, a permittee's lack of fault does not absolve it from liability. *See*

23   *Hawaii's Thousand Friends*, 821 F. Supp. at 1392.

24   USIBWC also argues this claim is moot. The Court agrees that there is no

25   effective relief the Court can grant for this violation of the Compliance Order, although

26   for reasons different than those asserted by USIBWC.[1] *See Northwest Envir. Defense*

27   

28   
   _____

   [1]    The Court does not reach USIBWC's argument of mootness premised on
   issuance of the 2014 Permit (which is addressed in the discussion of Claim 5).

*Center v. Gordon*, 849 F.2d 1241, 1245 (9th Cir. 1988). This claim is premised on USIBWC's failure to file a report in 2010 regarding sources of cadmium. A logical remedy would be money damages for not submitting the required report. However, the United States has not waived its sovereign immunity as to fines for past violations of the CWA; injunctive relief is the only available remedy. *See U.S. Dept. of Energy v. Ohio*, 503 U.S. 607, 613-29 (1992). Plaintiff does not identify any effective injunctive relief for failure to file a report due five years ago. Nor does Plaintiff allege that USIBWC has violated the cadmium levels since 2011, such that identifying cadmium sources would be meaningful at this time. Additionally, the permit requirement for USIBWC to identify the source of industrial pollutants in biosolids is not currently applicable in light of the USIBWC's disposal of biosolids in a landfill. *See* discussion *infra* Claims 6 and 7.

USIBWC has been found liable for exceeding the cadmium limits in its discharge from 2008 through 2011, as alleged in Claim 1, and the determination of a remedy for those violations remains pending before the Court. There is, however, no behavior to enjoin with respect to Claim 2.

**<u>Claim 5</u>**

Plaintiff alleges USIBWC failed to implement a pretreatment program in violation of the 2007 Permit, section V.A, and the Compliance Order, section III.C. Specifically, Plaintiff alleges that USIBWC was required under the 2007 Permit to take certain actions and failed to do so, including: "develop as necessary and implement mass influent objectives for pollutants" (section V.A.1.b.i); prepare and provide to ADEQ a report "comparing the Mexican and U.S. influent quality to the influent objectives . . . . The report shall characterize the frequency and magnitude of any exceedances of the influent objectives" (section V.A.1.d); and "undertake appropriate action under U.S. law and applicable international agreements to arrive at cooperative United States-Mexico agreements to facilitate actions in Mexico that will seek to eliminate exceedances of the influent objectives before the end of this permit's five-year term" (section V.A.1.e.iii). (Doc. 23 at 12-13, citing Doc. 46, Ex. 5 at 32-35.) Plaintiff also alleges USIBWC failed

to fulfill the Compliance Order requirement to submit a written description of the actions it would undertake to complete international agreements to facilitate actions in Mexico seeking to eliminate the exceedances. (Doc. 23 at 12, citing Doc. 23, Ex. A at 9.)

In its Answer, USIBWC did not deny Plaintiff's allegations that USIBWC violated each of these four requirements. Rather, it stated, in entirety:

> USIBWC denies that it was required to comply with the pretreatment program requirements in the Compliance Order because the relevant sources are located in Mexico, and USIBWC has no authority to regulate Mexican sources. Arizona has been informed of USIBWC's efforts to address the issue by working with Mexican authorities.

(Doc. 23, ¶ 85; Doc. 24, ¶ 85.)

Turning first to permit sections V.A.1.b.i and V.A.1.d, and section III.C of the Compliance Order. Because USIBWC does not deny in its Answer that it violated the 2007 Permit requirements regarding objectives and preparation of influent reports, the Court treats those facts as admitted. Fed. R. Civ. P. 8(b)(6); *see Fontes v. Porter*, 156 F.2d 956, 957 (9th Cir. 1947). USIBWC admits that it did not submit the statement required by section III.C of the Compliance Order. Neither in its response on the motion for summary judgment (*see* Doc. 56) nor at oral argument did USIBWC dispute Plaintiff's facts or arguments on these portions of Claim 5.

As to permit section V.A.1.e.iii, USIBWC does not deny in its Answer that it failed to take the required actions to eliminate exceedances as Plaintiff alleges in the Amended Complaint. (Doc. 23, ¶ 85; Doc. 24, ¶ 85.) Thus, the Court treats that fact as admitted. Fed. R. Civ. P. 8(b)(6); *see Fontes*, 156 F.2d at 957. In its motion for summary judgment, Plaintiff cites Rule 8 and argues that because USIBWC does not deny this allegation from the complaint it is admitted; therefore, there is no genuine issue of fact as to this part of Claim 5. (Doc. 45 at 9-10.) In its response to the motion for summary judgment, USIBWC does not dispute this point. (Doc. 56 at 7-12.) Rather, in implicit contradiction of its admission, it argues that it has complied with this portion of the permit by working "cooperatively with its Mexican counterparts to control the level of metals in the influent to the NIWTP." (Doc. 56 at 8-9.)

- 6 -

Although USIBWC's lack of denial as to the facts underlying Claim 5 is explicitly raised by Plaintiff in the motion for summary judgment, counsel representing USIBWC does not respond to that argument or seek to amend the Answer. Instead, USIBWC presents several documents to support its argument that it complied with this section of the permit.[2] These documents do not create a genuine issue of fact in light of USIBWC's admission that it violated section V.A.1.e.iii of the 2007 Permit.

In sum, USIBWC admits the four allegations of Claim 5 and the Court finds it violated the 2007 Permit, sections V.A.1.b.i, V.A.1.d, V.A.1.e.iii, and the Compliance Order, section III.C.

USIBWC argues that summary judgment should be denied because Claim 5 is moot. USIBWC relies upon the case of *West Coast Seafood Processor Ass'n v. Natural Res. Def. Council*, 643 F.3d 701, 704 (9th Cir. 2011) (quoting *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007)), for its holding that an action "is moot if there exists no 'present controversy as to which effective relief can be granted.'" Here, the question is whether there is effective injunctive relief available because that is the only remedy at issue. *U.S. Dept. of Energy v. Ohio*, 503 U.S. at 613-29.

USIBWC argues no injunctive relief is available on Claim 5 due to the issuance of the 2014 Permit. More specifically, USIBWC contends that an NPDES permit must include the provisions necessary to comply with the CWA, and compliance with the permit constitutes compliance with the CWA. Plaintiff does not dispute that full compliance with the 2014 Permit would constitute compliance with the CWA. However, Plaintiff cites numerous remedies the Court could impose, including: requiring USIBWC to control the industrial pollutants in the influent; directing USIBWC to install additional treatment at the NIWTP to ensure the effluent's limits are met; and ordering USIBWC to

_____

[2]     USIBWC cites the following evidentiary support: a sample invitation and agenda for a January 2015 meeting between the United States and Mexican sections of IBWC (to which ADEQ was invited); a November 2014 IBWC memorandum with a 3rd quarter pretreatment report including exceedances; quarterly pretreatment reports for 2008-11, including exceedances; and an ADEQ report acknowledging bi-national monitoring efforts to identify cadmium dischargers in Sonora. (Doc. 56, Exs. 12-16.)

1    stop accepting wastewater from Mexico unless it complies with the permit. USIBWC

2    responds that if the remedies suggested by Plaintiff were necessary to comply with the

3    CWA, they could have been included in the 2014 Permit.

4           There are several flaws in USIBWC's mootness argument. First, USIBWC

5    historically has not fully complied with its permit and Plaintiff cites evidence that

6    USIBWC is not in full compliance with the 2014 Permit. (Doc. 62, ¶¶ 1-3 & Exs. A-C

7    (reports of effluent exceedances of nickel for January, February, and April 2015).)

8    USIBWC does not dispute that it reported exceedances of the effluent limit for nickel

9    during those months. (Doc. 63, ¶¶ 1-3.) Thus, the fact that full compliance with a permit

10   would satisfy the CWA is irrelevant because the requirements of the permit alone are not

11   inducing USIBWC to comply. Second, although Plaintiff could have included additional

12   requirements in the 2014 Permit, such as a compliance schedule, it did not do so.

13   Therefore, additional remedies remain available to induce USIBWC to comply with the

14   permit requirements.

15          Third, accepting USIBWC's argument would moot all claims for injunctive relief

16   based on violation of an NPDES Permit, if the permit was renewed during the course of

17   the litigation. The remedy would always be subsumed in a subsequent permit, which is

18   not the law. *See Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 992 & n.2

19   (9th Cir. 2000) (acknowledging that defendant was operating under a new permit that was

20   essentially the same and upholding injunctive relief). In the above-cited case, the Ninth

21   Circuit explicitly rejects an argument that injunctive relief is limited to ordering

22   compliance with existing requirements and determines an equitable remedy is limited

23   only to the extent it must be "reasonably calculated to 'remedy an established wrong.'"

24   *Id.* at 1000 (quoting *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 986 (9th Cir.

25   1994)). USIBWC asserts that this case is unique because the 2014 Permit, section V.A,

26   contains detailed new steps that USIBWC must take to address exceedances of the permit

27   limits. (Doc. 46, Ex. 6 at 39.) The new requirements in the 2014 Permit serve the same

28   purpose as the sections of the 2007 Permit that Plaintiff relies upon in Claim 5 of the

1    Amended Complaint. The new 2014 Permit provisions are procedural requirements
2    designed to increase USIBWC's compliance with the influent standards for industrial
3    pollutants, which have been carried over from the 2007 to the 2014 Permit. (*Compare*
4    Doc. 46, Ex. 5 at 32 (2007 Permit, section V.A.1.b.i, setting limitations for 7 pollutants)
5    *with* Doc. 46, Ex. 6 at 41 (2014 Permit, section V.B.1.a, setting limitations for the same 7
6    pollutants and 5 additional ones).) Because the 2014 Permit objectives regarding
7    industrial pollutants in the NIWTP's influent remain substantially the same, USIBWC's
8    argument – that this case is excepted from the general rule that a new permit does not
9    moot a case to enforce an NPDES permit – fails. Claim 5 is not moot.

10       Plaintiff has demonstrated the absence of a genuine issue of material fact and is
11   entitled to summary judgment on Claim 5.

12       **Claims 6 and 7**

13       Claims 6 and 7 arise out of the 2007 Permit provisions regarding biosolids. The
14   facts underlying these claims are essentially undisputed.

15       In Claim 6, Plaintiff alleges USIBWC failed to adequately sample and monitor
16   biosolids to ensure they did not exceed pollutant ceiling concentrations, in violation of
17   the 2007 Permit, section III. The 2007 Permit prohibits selling, giving away, depositing
18   on the ground or land application of biosolids if the pollutant concentration for cadmium
19   exceeds the ceiling concentration limits in the Permits. (Doc. 46, Ex. 5 at 21-22.) Based
20   on sampling records, USIBWC generated biosolids exceeding the ceiling concentration
21   on May 11, August 4, October 9, and December 7, 2009; and February 17, April 9, June
22   3, and August 5, 2010. (Doc. 23, ¶ 95; Doc. 24, ¶ 95.) USIBWC reported that it had land
23   applied biosolids off-site with cadmium levels exceeding the ceiling concentration of 85
24   mg/kg. (Doc. 23, ¶ 96; Doc. 24, ¶ 96.) Therefore, Plaintiff has established that USIBWC
25   violated the 2007 Permit by land application of biosolids that exceeded the ceiling
26   concentration limit for cadmium, as alleged in Claim 6.

27       In Claim 7, Plaintiff alleges USIBWC failed to identify sources of cadmium in the
28   biosolids and take appropriate source control measures, in violation of the 2007 Permit,

section III.I.2.c.ii. In its motion response and at the hearing, USIBWC does not dispute Plaintiff's factual allegations with respect to Claim 7. Plaintiff cites two documents, written by USIBWC representatives, in which USIBWC states that it cannot identify the cadmium sources or take source control measures. (Doc. 46, Exs. 11 at 1, 12 at 1.)

USIBWC contends these claims are moot because it is not currently land applying biosolids and cannot do so under the current permit without approval. The violations alleged in Claims 6 and 7 arise out of permit requirements that apply only if USIBWC is land applying biosolids. There is no dispute that USIBWC ceased land application of biosolids in August 2010. (Doc. 56, Ex. 10.) Under the 2014 Permit, section III.A, all biosolids from the NIWTP must be disposed of in a landfill unless ADEQ and EPA approve an alternate plan. (Doc. 46, Ex. 6 at 21.) Thus, Plaintiff retains control over whether USIBWC can return to land applying the biosolids from the NIWTP.

A claim is moot if a court cannot grant any effective relief. *Gordon*, 849 F.2d at 1245. Arizona seeks only injunctive relief and prospective fines designed to induce compliance with an injunction. *See U.S. Dept. of Energy v. Ohio*, 503 U.S. at 614, 629. Because USIBWC is not land applying biosolids and cannot do so without permission from Plaintiff, it has no obligation to identify the pollutant sources and take control measures. Therefore, these claims are moot. This was confirmed at oral argument when Plaintiff's counsel was unable to identify any injunctive relief the Court could grant in relation to the biosolids violations. Plaintiff's request for summary judgment as to Claims 6 and 7 should be denied.

**Claim 8**

Plaintiff alleges that, as to the permit violations alleged in the Amended Complaint, USIBWC failed to comply with the written reporting requirements of the 2007 Permit, sections II.C and III.k.1.b.[3] ADEQ does not have in its files any written

---

[3]     The Amended Complaint refers to USIBWC's alleged failures to report, without specifying the relevant subsections of the 2007 Permit. (Doc. 23 at 15-16.) At oral argument, Plaintiff clarified that it was seeking summary judgment only as to the written (not oral) notification sections of the permit.

1   notifications from USIBWC of permit violations as alleged in the Amended Complaint.

2   (Doc. 46, Ex. 13 at 5-6.)

3       Section II.C of the 2007 Permit provides that permittees shall report

4   noncompliance with a permit condition that "may endanger the environment or human

5   health." (Doc. 46, Ex. 5 at 17-18.) It must be reported in writing within 5 days of the

6   event. (*Id.*) Plaintiff's motion fails to acknowledge that reporting is required only for

7   events that endanger health or the environment. To the extent Plaintiff suggests that all

8   permit noncompliance must be reported, that argument is not compelling. That would

9   render superfluous the language that requires reporting only violations that "endanger the

10  environment or human health." Further, in the section covering biosolids, the permit

11  acknowledges a distinction by creating different reporting requirements for those

12  incidents of noncompliance that endanger health or the environment and "other"

13  noncompliance. *See* 2007 Permit, section III.K.1 (Doc. 46, Ex. 5 at 25). At oral argument,

14  Plaintiff asserted that industrial pollutants such as those at issue in this case necessarily

15  impact public health and the environment, therefore, **any** amount over a limit is a threat.

16  Again, this is not supported by the permit, which sets a maximum amount allowed of

17  each pollutant. (Doc. 46, Ex. 5 at 4-5, 21, 32.) The allowed amounts are not zero (*see id.*),

18  as they necessarily would be under Plaintiff's argument. To establish a violation of the

19  plain language of section II.C, Plaintiff must demonstrate that the permit violations

20  alleged in the Amended Complaint endangered the environment or human health.

21      There is a genuine issue of material fact regarding whether any of the

22  noncompliance events were a danger to the environment or human health. Plaintiff cites

23  general information indicating that industrial pollutants, including cadmium, cyanide, and

24  ammonia nitrogen are regulated because they are a threat to human health and the

25  environment. Plaintiff did not cite the particular violations or the level of exceedance and

26  prove that each one was endangering. Therefore, there remains a factual question as to

27  whether USIBWC was required to report, under section II.C, any of the permit violations

28  alleged in the Amended Complaint.

Section III.K.1.b of the 2007 Permit requires that any noncompliance with a biosolids provision should be reported to ADEQ in writing within 5 days of the permittee "becoming aware of the circumstances." (Doc. 46, Ex. 5 at 25.) Plaintiff presents no evidence as to when USIBWC became aware of its violations of the biosolids section of the permit. USIBWC submitted an August 4, 2010 email, from USIBWC to two individuals at ADEQ, reporting that it had "just received word" that the cadmium levels in its biosolids were five times the limit.[4] (Doc. 56, Exs. 8, 9.) USIBWC asserts that this report was essentially contemporaneous with its knowledge because it previously had been relying upon erroneous lab reports. USIBWC's cited evidence, without further explanation, does not establish those facts. (*See* Doc. 56 at 13, Exs. 8, 9, 27-29.) However, there remains a genuine issue of material fact. Plaintiff has not established that USIBWC knew of a biosolids violation for more than five days before providing notice.

Plaintiff is not entitled to summary judgment on Count 8.

**Count 9**

Plaintiff alleges that USIBWC illegally discharged from the IOI in violation of A.R.S. § 49-255.01. Section 49-255.01(A) prohibits any discharge of pollutants without a permit. The IOI has deteriorated over time and has developed cracks and structural problems that allow discharge of sewage and other related wastewater. During storm events, storm water flowing through the Nogales Wash intermingles with untreated wastewater that escapes from the IOI and discharges into the wash. (Doc. 23, ¶ 111-12; Doc. 24, ¶ 111-12.)

The parties are in agreement that an owner or operator of a point source that discharges pollutants into a navigable water is liable. *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1145 (10th Cir. 2005). They disagree as to whether the USIBWC is an operator of the IOI, and the submitted documents do not provide a

---

[4] Plaintiff contends this email was sent to the wrong person at ADEQ, but the 2007 Permit states only that ADEQ should be notified, not a specific person. *See* 2007 Permit, section III.K.1.b (Doc. 46, Ex. 5 at 25). The requirement that the report be made to the ADEQ Biosolids Coordinator is a new provision in the 2014 Permit. (*Compare id.*, with Doc. 46, Ex. 6 at 28.)

definitive answer. A 1968 contract between the City of Nogales and the United States provided that the City of Nogales would pay 22% of the costs to construct the current NIWTP and the IOI, and would have an "undivided interest in the improvements corresponding to the financial contribution to their construction costs." (Doc. 56, Ex. 5, ¶¶ 2, 6.) It also provided, however, that the city would assume operation and maintenance of the plant and IOI. (*Id.*, ¶ 6.) As of 1996, USIBWC became the sole operator of the NIWTP, and the IOI is integral to the NIWTP serving its purpose of treating wastewater from Nogales, Sonora. (*See* Doc. 56-1, Ex. 3 at 1 (memorandum of agreement in which USIBWC agrees to operate and maintain the NIWTP, "a portion of which is constructed upon lands title to which vests in the City and a portion thereof consisting of a main trunk pipe line in Nogales, Sonora, Mexico").) Additionally, USIBWC has repeatedly provided funding to repair the IOI. (Doc. 62, Ex. E.) In four documents, dated from 2000 to 2014, the City of Nogales affirmed that it owns and operates the IOI. (Doc. 56, Exs. 23-26.) The Court's review of all the evidence presented reveals a genuine issue of fact regarding whether USIBWC is an owner or operator of the IOI, which precludes summary judgment on this claim.

## RECOMMENDATION

Based on the foregoing, the Magistrate Judge recommends that the District Court GRANT Plaintiff's Motion for Partial Summary Judgment as to Claim 5, and DENY Plaintiff's Motion for Partial Summary Judgment as to Claims 2, 6, and 7 because they are moot, and Claims 8 and 9 because there is a genuine issue of material fact. (Doc. 45.)

1    Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

2  written objections within fourteen days of being served with a copy of the Report and

3  Recommendation. A party may respond to the other party's objections within fourteen

4  days. No reply brief shall be filed on objections unless leave is granted by the district

5  court. If objections are not timely filed, they may be deemed waived.

6    Dated this 18th day of June, 2015.

7

8

9

10  _____

11  D. Thomas Ferraro
    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28