1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| State of Arizona, *et al*., | No. CV-12-00644-TUC-FRZ (DTF) |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| International Boundary and Water Commission, United States Section, *et al*., | |
| Defendants and Third-Party Plaintiffs, | |
| v. | |
| City of Nogales, Arizona, | |
| Third-Party Defendant. | |

Pending before the Court is the Amended Motion of the City of Nogales for Summary Judgment on Third Party Claim. (Doc. 76.) Third-Party Plaintiff International Boundary and Water Commission, United States Section (USIBWC) responded in opposition, with accompanying statement of facts. (Docs. 80, 81.) City of Nogales replied. (Docs. 86, 87.) Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Ferraro for a report and recommendation. Magistrate Judge Ferraro heard oral argument on November 19, 2015, after which he took the matter under advisement. (Doc. 91.) The Magistrate recommends the District Court, after its independent review of the record, enter an order granting in part and denying in part the City of Nogales's motion for summary judgment.

1

## BACKGROUND

2

### __The Clean Water Act__

3

The Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.*, was passed in 1972 "to

4

restore and maintain the chemical, physical, and biological integrity of the Nation's

5

waters." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52

6

(1987) (quoting 33 U.S.C. § 1251(a)). To achieve this objective:

7

8

> [section] 301(a) of the [CWA] makes unlawful the discharge of any pollutant into navigable waters except as authorized by specified sections of the [CWA]. 33 U.S.C. § 1311(a).

9

10

11

> One of these specified sections is § 402 which establishes the National Pollutant Discharge Elimination System (NPDES). 33 U.S.C. § 1342. Pursuant to § 402(a), the Administrator of the Environmental Protection Agency (EPA) may issue permits authorizing the discharge of pollutants in accordance with specified conditions. 33 U.S.C. § 1342(a).

12

*Id.* Pursuant to § 402(b) of the CWA, each State may create its own permit program that

13

conforms to federal guidelines, if it is approved by the EPA. *Gwaltney*, 484 U.S. at 52

14

(citing 33 U.S.C. §1342(b)). The State of Arizona has established a federally approved

15

state NPDES program (AZPDES permit program) which is administered by the Arizona

16

Department of Environmental Quality (ADEQ). Ariz. Rev. Stat. §§ 49-203(A)(2), 49-

17

255.01; Ariz. Admin. Code § R18-9-A901 *et seq.*

18

A permittee is legally bound to meet the specific effluent limitations, conditions,

19

and other standards established by its NPDES permit. *Hawaii's Thousand Friends v. City*

20

*and Cnty of Honolulu*, 821 F. Supp. 1368, 1391 (D. Haw. 1993) (citing *Sierra Club v.*

21

*Union Oil Co. of Cal.*, 813 F.2d 1480, 1483 (9th Cir. 1987), *vacated on other grounds*,

22

485 U.S. 931 (1988), *judgment reinstated*, 853 F.2d 667 (9th Cir. 1988)). The CWA and

23

Arizona impose strict liability for violations of NPDES permits. Ariz. Rev. Stat. § 49-

24

261; 40 C.F.R. § 122.41(a)(2). The director may bring an enforcement action for a

25

compliance order or a violation of an NPDES permit. Ariz. Rev. Stat. §§ 49-261(E), 49-

26

262.n

27

28

**AZPDES Permit**

The Nogales International Wastewater Treatment Plant (NIWTP) treats wastewater from Nogales, Arizona and Nogales, Sonora, Mexico. (Doc. 5, ¶ 6; Doc. 75, ¶ 6.) Wastewater travels from the international border to the NIWTP through a pipeline known as the International Outfall Interceptor (IOI). (Doc. 5, ¶ 9; Doc. 75, ¶ 9.) In 2006, USIBWC and the City of Nogales applied for the AZPDES permit for the NIWTP that is at issue in this case. (Doc. 77, Ex. 6.) The permit was issued effective December 24, 2007, and allowed the discharge of treated wastewater from the NIWTP into a tributary of the Santa Cruz River. (*Id.*, Ex. 8.)

**Amended Complaint**

Plaintiff, the State of Arizona, alleges nine claims against USIBWC in the Amended Complaint. (Doc. 23.) Counts 2, 6, and 7 have been dismissed. (Doc. 85.) Counts 1, 3, and 4 allege that USIBWC illegally discharged cadmium, cyanide, and ammonia nitrogen, respectively, in violation of the AZPDES permit. (Doc. 23 at 7-8, 9-11.) Count 5 alleges that USIBWC violated Part V.A. of the Permit and Section III.C of a Compliance Order by failing to implement a pretreatment program. (*Id.* at 11-13.) Count 8 alleges USIBWC failed to comply with reporting requirements of the AZPDES permit. (*Id.* at 15-16.) Count 9 alleges that USIBWC illegally discharged untreated wastewater from the IOI. (*Id.* at 16-17.)

**DISCUSSION**

In Claim 1 of the Third-Party Complaint, USIBWC alleges that if it is found liable as to any violations of the NIWTP's permit, Nogales (as co-permittee) is jointly and severally liable. (Doc. 5.) In Claim 2, USIBWC alleges that because Nogales owns the IOI it is solely responsible for discharges from the IOI. (*Id.*) Alternatively, if the USIBWC is held responsible as to the IOI, it alleges that the City of Nogales should be held similarly responsible. (*Id.*)

In the instant motion, Nogales argues that USIBWC cannot seek contribution from Nogales because Nogales has no fault for the permit violations alleged in the Amended

1 | Complaint, Counts 1-8. Further, Nogales argues the USIBWC is the owner of the IOI and
2 | responsible for the violations in Count 9 of the Amended Complaint. Additionally,
3 | Nogales argues the Amended Complaint seeks injunctive relief and prospective penalties,
4 | which do not support a third-party action.[1]

5 | **Summary Judgment Standard**

6 | In deciding a motion for summary judgment, the Court views the evidence and all
7 | reasonable inferences therefrom in the light most favorable to the party opposing the
8 | motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Ins.*
9 | *Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Summary judgment is appropriate if
10 | the pleadings and supporting documents "show that there is no genuine issue as to any
11 | material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.
12 | Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those
13 | "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S.
14 | at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return
15 | a verdict for the nonmoving party." *Id.*

16 | **Contribution**

17 | Nogales first argues that there is no right to contribution under the CWA.
18 | Although the CWA itself does not create a right of contribution, Nogales and USIBWC
19 | cite numerous cases recognizing a federal common law right to contribution for claims
20 | brought pursuant to the CWA. *See Mid-Valley Pipeline Co. v. S.J. Louis Const., Inc.*, 847
21 | F. Supp.2d 982, 987 (E.D. Ky. 2012); *Complaint of Berkley Curtis Bay Co.*, 557 F. Supp.
22 | 335, 338-39 (S.D. N.Y. 1983) (finding right to proceed under maritime tort doctrines
23 | preserved); *United States v. Bear Marine Services*, 509 F. Supp. 710, 716 (E.D. La. 1980)
24 | (finding right to contribution clearly preserved); *In re Oil Spill by the Oil Rig*
25 | *"Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, 841 F. Supp.2d 988, 1005

26 |
27 | _____
[1] Nogales argued in its motion that there is no legal basis for USIBWC's claim for indemnity. In response, USIBWC asserted that it is not seeking indemnity. (Doc. 80 at 4 n.1.)
28 |

- 4 -

(E.D. La. 2012) (in dicta, court found equitable right to contribution under CWA). Nogales cites no case that has considered the question – is there is a federal common law right to contribution for claims advanced under the CWA – and concluded such a right does not exist. And the Court has not found any cases addressing contribution in the context of an NPDES permit. Based on the available case law, the Court finds there is a right to contribution.

Nogales next argues that, even if there is a right to contribution, such a right is fault-based. The Court agrees. The USIBWC argues that it does not have to establish fault because the CWA is a strict liability statute, which holds liable the owner or operator of a point source that discharges pollutants. More specifically, that Nogales, as the owner of the NIWTP and as a co-permittee, is liable for any violations. Similarly, as at least part owner of the IOI, USIBWC argues that Nogales is responsible for CWA violations based on discharges from the IOI. USIBWC cites no law to support its argument that strict liability from the CWA would pass-through to its claim against Nogales.

USIBWC is not asserting a claim under the CWA against Nogales, but a common law claim for contribution. Indeed, both parties agree the CWA does not establish a right to contribution. Thus, the CWA's strict liability standard is not relevant to the Third Party Complaint. The cases cited above all indicate that contribution for a CWA claim can be sought from a third-party *at fault* for a pollution discharge. *See Mid-Valley Pipeline Co.*, 847 F. Supp.2d at 987-989; *Complaint of Berkley Curtis Bay Co.*, 557 F. Supp. at 338-339; *Bear Marine Services*, 509 F. Supp. at 719; *In re Oil Spill by the Oil Rig "Deepwater Horizon*," 841 F. Supp.2d at 1005 (noting that equitable contribution is based on fault). As set forth in the Restatement (Second) of Torts § 886A(2), a party is not "required to make contribution beyond his own equitable share of the liability." The Court determines that USIBWC can seek contribution only to the extent it establishes Nogales's fault for the violations alleged by Arizona.

1

      <u>Permit Violations (Third Party Complaint, Claim 1)</u>

2

      Because USIBWC manages the NIWTP, Nogales argues that USIBWC is solely

3

responsible for any alleged violations of the permit and that Nogales holds no fault for

4

those violations. To evaluate fault, the Court looks at the specific allegations of the

5

remaining permit-based claims from the Amended Complaint, Claims 1, 3-5, and 8.

6

      First, Claims 1, 3, and 4 allege that USIBWC discharged pollutants from the

7

NIWTP in violation of its permit. Claim 8 alleges that USIBWC violated reporting

8

requirements of the permit. In September 1996, and again in January 2006, USIBWC and

9

Nogales signed a Memorandum of Agreement which provided that USIBWC would

10

"operate and maintain" the NIWTP "in accordance with the applicable NPDES permit,

11

and all other applicable laws, regulations, and permits of the State of Arizona and the

12

United States." (Doc. 77, Ex. 4 at 2; Ex. 2 at 4.) The MOA also provided that USIBWC

13

would "[p]rovide reports to ADEQ and EPA, and other state and federal agencies as

14

required for compliance with the NPDES and State of Arizona permits." (*Id.*, Ex. 4 at 2,

15

Ex. 2 at 5.) In light of these agreements, USIBWC was wholly responsible for complying

16

with the permit provisions in its operation of the NIWTP. In its brief, USIBWC did not

17

contend that Nogales was a causative factor in the alleged permit violations; it argued

18

solely that Nogales was responsible under a theory of strict liability. At oral argument,

19

USIBWC conceded that Nogales had no ability to stop the permit violations.

20

      Second, Claim 5 alleges a violation of the permit, part V.A.1, and the Compliance

21

Order, section III.C. Section V.A.1 of the permit applies only to USIBWC. (Doc. 46, Ex.

22

5 at 32.) Similarly, the Compliance Order was issued only to USIBWC. (Doc. 23, Ex. A.)

23

Thus, Nogales necessarily holds no responsibility for these violations.

24

      Nogales has established that it is not at fault for the permit violations alleged in the

25

Amended Complaint. Therefore, as a matter of law, USIBWC has no right to contribution

26

and summary judgment should be granted on Claim 1 of the Third Party Complaint.

27

28

- 6 -

1    <u>Violation Arising from the IOI (Third Party Complaint, Claim 2)</u>

2         In Count Nine of the Amended Complaint, Arizona alleges that USIBWC illegally

3    discharged pollutants from the IOI without a permit. During storm events, storm water

4    flowing through the Nogales Wash intermingles with untreated wastewater that escapes

5    from the IOI and discharges into the wash. (Doc. 23, ¶ 111-12; Doc. 24, ¶ 111-12.) In

6    turn, in the Third Party Complaint, USIBWC alleges that Nogales, as the owner and

7    operator of the IOI, bears responsibility for this violation.

8         Nogales argues that it is not responsible for violations relating to the IOI because it

9    is not responsible for pollutants from Mexico. This misconstrues the factual premise of

10   the claim. In contrast to Claims 1-8, which are based in large part on the discharge of

11   industrial pollutants from Mexico, Claim 9 is based on the release of untreated sewage

12   from the IOI. That sewage originates in both Mexico and the United States. Therefore,

13   this argument does not release Nogales from responsibility as to the IOI.

14        Alternatively, Nogales contends it does not own the IOI in entirety and that

15   USIBWC operates the IOI. In numerous documents, Nogales avows that it is the sole

16   owner and operator of the IOI. (Doc. 77, Ex. 22 at 2, Ex. 23 at 1, Ex. 25; Doc. 81, Ex. 16,

17   Ex. 19 at 2, Ex. 20 at 2.) At a minimum, Nogales concedes that it owns 22% of the IOI.

18   (Doc. 75 ¶ 10 & Ex. 2; Doc. 76 at 3, 13, & Ex. 19 ¶¶ 2, 6.) Both Nogales and USIBWC

19   have conducted and/or funded maintenance on the IOI in the relevant time frame. (Doc.

20   77, Ex. 3 ¶ 29, Ex. 10, Ex. 23; Doc. 81, Ex. 20 at 2 ("City agrees to provide

21   documentation of its costs incurred in the operation and maintenance of the IOI") In its

22   reply brief, Nogales stated that it does not "'operate' the IOI any more than the USIBWC

23   does." (Doc. 86 at 9.)

24        Thus, there remains a genuine issue of material fact as to Nogales's level of

25   ownership and operation of the IOI. In turn, there is an issue of fact regarding whether

26   Nogales is at fault for the discharge of pollutants from the IOI. Nogales is not entitled to

27   summary judgment as to Claim 2 of the Third Party Complaint.

28

1   Finally, Nogales argues that Arizona's request for injunctive relief cannot be

2   applied to Nogales because the request relates solely to acts committed by USIBWC. As

3   discussed above, that is not true with respect to the IOI, as to which a question of fact

4   remains regarding Nogales's level of responsibility. Until the Court awards a remedy, it

5   cannot determine Nogales's equitable level of contribution, if any.

6   **RECOMMENDATION**

7   Based on the foregoing, the Magistrate Judge recommends that the District Court

8   GRANT Third Party Defendant Nogales's Motion for Summary Judgment in part, as to

9   Claim 1 of the Third Party Complaint, and DENY it in part, as to Claim 2 of the Third

10   Party Complaint (Doc. 77).

11   Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file

12   written objections within fourteen days of being served with a copy of the Report and

13   Recommendation. A party may respond to the other party's objections within fourteen

14   days. No reply brief shall be filed on objections unless leave is granted by the district

15   court. If objections are not timely filed, they may be deemed waived.

16   Dated this 30th day of December, 2015.

17

18

19

20   _____

21   D. Thomas Ferraro
     United States Magistrate Judge

22

23

24

25

26

27

28